472

**James Avery CHANCE and wife, Myrtle Chance, et al., Plaintiffs**

v.

**The BOARD OF EDUCATION OF HARNETT COUNTY et al., Defendants.**

Civ. A. No. 1331.

United States District Court
E. D. North Carolina,
Wilmington Division.
Dec. 30, 1963.

Nelson W. Taylor, Fayetteville, N. C., for plaintiffs.

I. Beverly Lake, Raleigh, N. C., Robert B. Morgan, Lillington, N. C., for defendants.

WARLICK, District Judge.

This is a school integration case filed in November, 1962, in the Raleigh Division of the Eastern District of North Carolina; later, by consent transferred for hearing to the Wilmington Division and heard at the August, 1963 Special Term in that Division. It was filed for the use and benefit of a number of Indian children residing in Harnett County, North Carolina, by and through their respective parents as next friends, to compel the defendants to admit the named children to certain schools in Harnett County, so that they might thereupon seek to acquire the education which they desire and to which they are entitled under the Constitution of North Carolina.

This case is different in many particulars from the other school cases heard and determined since the 1954 decision of the United States Supreme Court, Brown v. Board of Education, 349 U.S. 294, 299, 75 S.Ct. 753, 756, 99 L.Ed. 1083, in that the others have been instituted for and in behalf of Negro children. This one however is on the behalf of Indian children who reside with their parents in Harnett County, North Carolina.

Originally the action as instituted sought relief for thirty children, however three of these children have moved elsewhere with their parents, leaving twenty-seven as party plaintiffs to this action.

The Harnett County Board of Education is a body corporate under the North Carolina laws and has full and complete control over assignment and re-assignment of all children attending the schools of Harnett County. The individual defendants are members of the Board of Education. All of the minor plaintiffs are qualified to attend the schools of Harnett County.

The Harnett County Board of Education has been operating three types of public schools, both as to elementary and high school grades,—one system of schools for the white children,—another system of schools for Negro children,—and another system of schools for the Indian children. From the evidence heard the following Findings of Fact are made:

FINDINGS OF FACT:

All the minor plaintiffs now attend Maple Grove School, a three-room school erected in 1924 for the Indian children

of that section. It has three teachers who teach all of the eight grades assigned to this elementary school. There is no other elementary school for Indian children in Harnett County, and there never has been a high school for Indian children in said county. No white children attend this school, and none have ever been in attendance there. No Indian children of elementary school age attend any school in Harnett County except Maple Grove School.

Maple Grove School was established prior to the 1954 school case and since such date has continued to be operated as a school attended only by Indians, as it was prior to that date. It further appears that since 1954 only white children have attended grammar school in those schools in Harnett County which were attended only by white children prior to the Brown v. Board of Education decision.

The Harnett County Board of Education has established a policy which it seemingly adheres to of causing to be published each spring an announcement of the pre-school clinics in which it advises parents of students who are to enter the first grade, that their children may be taken to the schools in Harnett County for registration for the next ensuing school year. This announcement in substance seems to give the schedule of the clinics for the various schools but does not direct to which of the schools the children should be taken. A similar announcement has been regularly made over a number of years, both before and after 1954. This announcement contains no information whatever which indicates that either before or after 1954 the parents are in any wise free to take their children to any school of their choice, and the evidence shows that they were not. Prior to Brown v. Board of Education, supra, the principal of each school controlled the pre-school clinic enrollments at such school and as racial segregation in its schools was required by the Constitution of North Carolina, all of the schools in Harnett County were obviously operated on a racially segregated basis.

Each year thereafter all students have been routinely assigned to the schools attended during the previous years, from which circumstance one originally enrolled in the first grade would, unless otherwise re-classified, continue in that particular school throughout the whole grades period. The white children for certain areas in the county attend certain schools; and the Indian children in the county of grammar grades attend Maple Grove School, regardless of where they may reside in said county. Distance obviously is of no consequence and the Indian children, the Negro children, and the white children are all transported by busses to said schools, unless living so near that transportation was denied for that reason. Under this rule white children who live closer to Maple Grove School than to the school to which they actually are assigned are nevertheless transported in busses furnished for that purpose, past Maple Grove School and on to the schools to which they have been assigned. Indian children living closer to other schools to which the white and Negro children are assigned are transported by bus from all parts of the county to Maple Grove School.

When the Indian children were graduated from Maple Grove School they were sent to East Carolina Indian School, until 1962 when this practice was discontinued and the Indian High School graduates in Harnett County were then integrated in the Dunn High School which up until that time was operated solely for the use and benefit of the white children of that area. The East Carolina Indian School seems to have been a centrally organized school for Indians to which children of that race would attend from many counties. It was not located in Harnett County. This practice seemingly was discontinued when the Board felt that such could not be justified under the existing laws.

All initial assignments of children to the first grade in Harnett County have regularly been made to segregated schools and this has been the rule without exception over the years.

Two of the minor plaintiffs, Dwight Maynard and Warren Maynard, prior to the fall of 1961, had lived with their parents in Richmond, Virginia and had attended Highland Springs Elementary School in that city. On returning to Harnett County to live, their parents, realizing that school would start before they could actually complete moving their effects, the two boys were thereupon brought to their grandmother's home and were enrolled at Erwin Elementary School, for white children. About ten days thereafter it evidently was learned that they were Indians and the principal informed them and their grandmother that they could no longer remain at the Erwin School and would have to attend the Maple Grove School for Indians. Thereupon they entered Maple Grove and have continued their studies there without interruption. The grandmother had even gone so far as to pay the rent on the school books, the insurance, and other factors which must be given attention if and when children are properly enrolled.

In the spring of 1961 long prior to the time when the assignments for the next school year of 1961-62 were to be made, a number of the plaintiffs made application through their parents, to the defendant Board of Education and on forms prescribed by it, asking to be re-assigned to other grammar schools named in their applications, which schools were attended solely by white children. These applications were properly filled out and submitted within the time limit set by the law. All such applications through the requests made were refused by the Board. Some of the applicants asked for a hearing before the Board. These requests were granted. Quite a number of the parents appeared at the hearing,— some brought their children, and others appeared before the Board without them.

From the evidence it appears that the applicants stated their position clearly and before the Board. No questions of consequence were asked by the Board, though several parents did state why they wanted their children transferred, though these reasons as given appeared on the individual applications as originally filed. After the hearing all requests for re-assignment were again denied by the Board without the giving of any reason therefor, and regardless of whether the parents or children, or either or both had appeared before the Board for the hearing. This is to say that every application for re-assignment was eliminated with one full sweep.

In the spring of 1962 some of the plaintiffs again submitted their applications for re-assignment for the school year 1962-63, and again sought admission to schools attended solely by white children. These applications likewise were properly filled out and submitted in due time as the law would require. All applications were again denied by the Board. Obviously knowing the results that would evidently flow from a request for a hearing before the Board, and being fully apprised of such from previous experiences, no requests for a further hearing were made. It would thus appear that all minor plaintiffs have submitted timely and proper applications for re-assignment to schools other than the Maple Grove School. A great majority have asked for and have had a hearing before the Board. None have been re-assigned and such hearings as were had were purely perfunctory and indicate the intent and purpose of the Board of Education of Harnett County to continue operating the schools of said county solely and wholly upon a segregated basis.

The grammar schools of Harnett County for members of the white race have on its school rolls approximately the same number of children for each teacher as does the Maple Grove School, at least through the sixth grade. The three teachers in the Maple Grove School during 1962-63 had pupils allotted as follows: The teacher assigned to grades 1, 2 and 3 had 25 pupils; the teacher assigned to grades 4, 5 and 6, had 20 pupils; and the teacher assigned to grades 7 and 8 had 10 pupils, and grades as such were taught simultaneously in the two and one half rooms which were available for

instruction for the teachers. Nothing comparable to this existed in any of the schools to which re-assignment had been requested, save and except a grouping of two classes in a few instances. However if there did appear overcrowding in the white schools, children of the white race are still being admitted to such school.

There were four graduates from the eighth grade of Maple Grove School in the spring of 1963 and these having completed their elementary education were assigned to the Dunn High School.

DISCUSSION:

This case presents a rather singular situation in that it is predicated upon the maintenance of segregated schools for the Indian children in the elementary grades, such as has been the usual method in the operation of schools for the Negro children in North Carolina.

Until the hearing of this matter I had never had any personal contact with the Indians of Eastern North Carolina, and was obviously unaware of their habits, customs and behavior. During the trial of this matter I closely observed those present at such hearing, and came to the conclusion that they were not only very intelligent, but particularly well behaved, and well dressed. From their testimony I was impressed with the fact that they not only were well informed but that they had made of themselves first-class citizens.

For many years I have been personally acquainted with the Cherokee Indian who resides on the Qualla Boundary in Swain and Jackson Counties in the Western District of North Carolina, as the District Court generally exercises a supervisory position over many of the tribal activities, and all cases, civil and criminal, involving the Indian and his rights and responsibilities are heard and determined in such court. From many sources of information I have learned of their past and naturally my association with them at court terms held in the Bryson City Division has acquainted me with their present position in life. The Cherokee, like every American Indian, has been greatly maligned, and the white man's treatment of him has been such as to reflect little if any credit on us. In fact it constitutes one among the tragic factors in the developing activities of our country through the years.

The Cherokee, however, has come a long way and naturally the government in recent years has been a powerful benefactor in his development. He has become a business man, owning and successfully operating Motels, eating houses, and other enterprises, and more recently has advanced from tribal funds an amount in excess of one half million dollars toward the erection of a manufacturing plant on the Qualla Boundary, through which means it is hoped the young Indian brave can be taught a trade which will be of value to him through his life. His counterpart in Eastern North Carolina has done likewise I am informed.

The history of the Cherokee in Western North Carolina is an intriguing one. The opinion of Chief Judge Parker in the case of United States v. Wright, et al., 4 Cir., reported in 53 F.2d 300, fully and carefully portrays this Indian Nation's position down through the years, and constitutes an historical bit of reading which is fully well worth its study. This portrayal of the white man's dominating spirit of the Indian particularly indicates man's inhumanity to man.

There is no Constitutional prohibition against intermarriage in North Carolina between the Indian and the white, as is imposed against marriage between the white and the Negro, and this likely has made possible a full association between members of the two races. However General Statutes 51–3 represents a legislative enactment against intermarriage, which however seemingly is never enforced, as the Cherokee and the white often intermarry, and under the tribal regulations as approved by the Congress, membership on the Tribal Roll is not lost until the blood strain is materially weakened.

During the hearing of this case an effort was made by the Court to determine just why Maple Grove School was operated only for Indian children at this time, particularly in view of the decisions of the court and more so since Indian students of the high school grades have been integrated in Harnett County since 1962, and are presently attending the high school in Dunn with students of the white race. The best that could be learned from a discussion with Dr. Lake and Senator Morgan, defendants' counsel, was that the Maple Grove School had been built in 1924 out of a desire by the Indians for such facility, and a respect for such desire by the school authorities in Harnett County, and as such it had continued to be a school for elementary students of the Indian race. The Court was told that approximately one half of the Indian children did not desire to attend the white schools and that therefore they should not be prejudged and their desires cast aside; that some of the school children lived nearer to Maple Grove School than to any other school operated by the defendants in Harnett County; and that if the general order of integration came about that it would mean the obvious abandonment of the school. On such being brought to the Court's attention from said conversation, it was suggested that the school could, if such should come about, be used by the white and Indian children of that area as a general school, and it was then intimated that probably this would result in confusion and otherwise constitute an educational hazard.

Obviously the discussion went farther but these thoughts appeared to have been what was primarily discussed between the Court and those of counsel appearing in the cause.

The defendant School Board and its individual members contend among other things that they are fully complying with the "North Carolina Pupil Enrollment Act." N.C.Gen.Stat. §§ 115–176 to 115–179 (1960), and in so doing they contend that they are not purposely undertaking to operate a segregated system of schools in Harnett County, but on the contrary are doing their dead level best in a very real sense to live up to the requirements of the law and to fully obey its mandates as nearly as possible.

I have studied all the factors involved very carefully and for the life of me I cannot bring my thinking around to these contentions.

On the facts as found herein and as required by Rule 52 Title 28, U.S.Code, I conclude as a matter of law that the plaintiffs in this action are entitled to the relief which they seek and that they should be admitted to the schools as requested by them under the re-assignment originally sought.

Any other decision could not be made in my opinion, in view of the two recent opinions of our Court of Appeals. In the case of Jeffers v. Whitley, 4 Cir., 309 F.2d 621 (1962) and Wheeler v. Durham City Board of Education, 4 Cir., 309 F.2d 630 (1962), we find a full review in the per curiam opinion in the first cited case and the opinion of Chief Judge Sobeloff in the second cited case, in which the court goes fully into all of the decisions since Brown v. Board of Education, 349 U.S. 294, 299, 75 S.Ct. 753, 756, 99 L.Ed. 1083, and basically sets out the yardstick as a definite means of determining school integration cases in the future. A full discussion here would be an unnecessary sort of thing and a declaration that plaintiffs are entitled to the relief they seek is in order. Accordingly the defendants and each of them are ordered:

1. To admit all of the minor plaintiffs to the school to which re-assignment was requested by each of them,—and

2. That the defendants and each of them be restrained and enjoined from applying racial considerations to any applications for re-assignment under the North Carolina Pupils Enrollment Act. And that this order shall be retroactive to and become effective as of the Fall Session 1963, as was announced by the Court when the cause was submitted on its trial in Wilmington.

Counsel will submit decree.